IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ALLAN A. NORDSTROM,

                Plaintiff,

   v.

TOWN OF STETTIN, MATTHEW
WASMUNDT, and ALLIED WORLD SPECIALTY
INSURANCE COMPANY,

                Defendants.

OPINION & ORDER

16-cv-616-jdp

---

    Big cities do not have a monopoly on hardball politics, as this case from the little Town of Stettin in north central Wisconsin demonstrates. Plaintiff Allan A. Nordstrom was appointed, and later elected, to serve as a town supervisor. During his short tenure on the town board, Nordstrom butted heads with the chairperson of the town board, defendant Matthew Wasmundt, and other members of the board. The tension between Nordstrom and Wasmundt led to Wasmundt recommending that criminal charges be filed against Nordstrom and culminated with Nordstrom's resignation. Nordstrom has filed suit against Wasmundt, the Town, and its insurance company, defendant Allied World Specialty Insurance Company, asserting claims under the First and Fourteenth Amendments of the Constitution. Dkt. 25. Nordstrom contends that he was not just the victim of hardball politics, but that he faced unlawful retaliation for exercising his right to free speech.

    Defendants move to dismiss Nordstrom's amended complaint (Dkt. 7) under Federal Rule of Civil Procedure 12(b)(6), contending that Nordstrom fails to state a claim upon which relief can be granted. Dkt. 12 and Dkt. 18. Nordstrom has amended his complaint yet again. Dkt. 25. But those most recent amendments do not affect the court's analysis, so the court will

rule on defendants' motions without asking for further input. Generally speaking, elected officials cannot use the First Amendment to shield themselves from the political consequences of their words. But accepting Nordstrom's allegations as true, he states First Amendment retaliation claims against defendants because they abused the political process in forcing Nordstrom out of office. The court will deny the motions to dismiss.

ALLEGATIONS OF FACT

The court draws the following facts from Nordstrom's first amended complaint, Dkt. 7, and documents referred to in it, and accepts them as true for the purpose of deciding defendants' motions. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1, 746 (7th Cir. 2012).

The Town of Stettin is governed by a town board comprised of a chairperson and two supervisors. Sometime before 2012, Wasmundt was elected to serve as chairperson of the board, and Jesse Graveen and Tom O'Brien (non-parties) were elected to serve as supervisors. In 2012, O'Brien stepped down, and Wasmundt and Graveen appointed Nordstrom to serve the remainder of O'Brien's term. In April 2013, Wasmundt, Graveen, and Nordstrom were all elected to serve full, two-year terms in their positions on the board.

Around the time of the election, the three board members began to disagree on several matters relating to town management. Wasmundt and Graveen, the senior members of the board, wished to maintain the traditional practices and policies used by the town, whereas Nordstrom, the new board member, advocated for reforms such as increased transparency measures, written job descriptions for town employees, and soliciting land donations by individual land owners. Nordstrom voiced his opinions on these subjects during town board meetings. Nordstrom felt that the meeting minutes did not accurately reflect what occurred

during the meetings. But Wasmundt and Graveen always approved the minutes over Nordstrom's objections. Eventually, the Town (presumably on Wasmundt's instruction) stopped providing Nordstrom with copies of the previous meeting's minutes to review before the vote to approve them at the next meeting.

Another source of tension among the board members was an eroding drainage culvert on Town resident Dave Seubert's property. Nordstrom instructed Town employees to haul rock from the Town rock pile to Seubert's property, at the Town's expense, so that Seubert could repair the erosion, despite Wasmundt objecting during several board meetings to this use of Town property on private land. Eventually, Wasmundt indicated during a board meeting that he would ask the sheriff to charge Nordstrom with the theft of Town materials. He followed through with this threat, and the Marathon County Sheriff's Department investigated Nordstrom's part in the use of Town rock on private property and eventually forwarded a report to the district attorney's office stating that "it is unknown if charges are warranted." Dkt. 7, ¶ 4058. The district attorney never filed charges.

Tension among the board members reached a breaking point when Town resident Roger Hoeppner sued the Town, challenging the legality of the Town board's actions. Hoeppner contended that the Town's elected officials had not taken their oaths of office within five days of their election in April, which "constitutes refusal to serve in office" under Wis. Stat. § 60.31(4), leaving their seats vacant, according to Wis. Stat. § 17.03(7). Hoeppner was correct as far as the facts were concerned: the board members had not taken their oaths within five days as required by Wisconsin law. The legal consequences of this failure, and the remedy for it, are not at all clear.

3

The board members were concerned about Hoeppner's suit, so the Town's attorney, Shane VanderWaal, came up with a solution: over a series of board meetings, the Town clerk, Dawn Krueger, would declare each Town official's position vacant, and the remaining members would immediately reappoint the official to fill the vacancy for the remainder of the term. The official would immediately take his or her oath. Once all board members were properly appointed, they could vote to ratify all of their acts taken since the April election. (Defendants do not address the obvious flaw in this process, which is that if the unsworn members were not authorized to serve on the board, they would not be authorized to reappoint the board members either.) The board began to implement VanderWall's plan in October, when Krueger declared Wasmundt's seat vacant, and Krueger and Graveen immediately voted to reappoint Wasmundt as chairperson. Nordstrom voted against reappointment. In a December board meeting, this process was repeated for Krueger and Graveen. Again, the officials were reappointed over Nordstrom's objections. (It's unclear why Krueger, who was not a board member, voted.)

In January 2014, the time came for Nordstrom's seat to be declared vacant and refilled. By this point, Nordstrom was represented by his own attorney, Peter Bear.[1] Bear believed that the failure to take a timely oath could be remedied simply by taking the oath at a later date, rather than the vacate-and-reappoint procedure that VanderWaal recommended. He asked VanderWaal and Wasmundt not to repeat the vacate-and-reappoint procedure for Nordstrom's seat "because, as they all knew, given the composition of the board, . . . there would not be

---

[1] Nordstrom was represented by Bear, rather than VanderWaal, who represented the other board members, because Nordstrom had previously filed a complaint against VanderWaal with the Office of Lawyer Regulation, accusing VanderWaal of favoring Wasmundt's personal interests while purporting to represent the Town. The Town paid both attorneys' fees.

4

sufficient votes for . . . Nordstrom to be reappointed to his seat." *Id.* ¶ 4076. Despite Bear's request, Wasmundt moved forward with plans to declare Nordstrom's seat vacant during the January 8 board meeting. Nordstrom "believed that it was a foregone conclusion" that the other board members would appoint someone else to his seat once it was declared vacant. *Id.* ¶ 4083. Because he feared that this would cause "disorder and possibly violence" among the residents attending the meeting, he chose to submit a letter of resignation before the meeting. *Id.* At the January 8 meeting, Krueger declared Nordstrom's seat vacant. The other board members appointed Joe Gore to fill Nordstrom's seat for the remainder of the term.

Nordstrom filed suit against the Town and Wasmundt in September 2016, alleging that they retaliated against him by accusing him of criminal conduct and constructively removing him from office in violation of his rights under the First and Fourteenth Amendments.

The court has subject matter jurisdiction over Nordstrom's claims pursuant to 28 U.S.C. § 1331 because they arise under federal law.

ANALYSIS

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to state a plausible claim for relief, that is, facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court is not bound to accept alleged legal conclusions. *Id.* at 827.

A. **First Amendment retaliation claims**

To prevail on a First Amendment retaliation claim, Nordstrom "must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation

5

that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). Defendants contend that Nordstrom does not allege facts sufficient to satisfy the first or second prong of the analysis.

Defendants first contend that Nordstrom did not engage in First Amendment-protected activity, citing the Supreme Court's holding in *Garcetti v. Ceballos* that statements made by public employees pursuant to their official duties are not protected by the First Amendment. 547 U.S. 410, 421 (2006). Nordstrom concedes that his statements were made pursuant to his official duties as a town supervisor, but he argues that *Garcetti* does not apply to him because he is an elected official.[2] Neither the Supreme Court nor the Seventh Circuit has directly addressed whether *Garcetti* applies to elected officials' political speech, *Siefert v. Alexander*, 608 F.3d 974, 991 (7th Cir. 2001) (Rovner, J., dissenting in part), but most of the courts that have addressed the question have held that *Garcetti* does not apply.[3] This court will follow the majority.

---

[2] The parties quibble over whether Nordstrom was, in fact, an elected official, given his failure to take the oath of office within the statutorily prescribed time. But even if Nordstrom were not an elected official, he certainly is not a public employee like Ceballos in *Garcetti*. Besides, Nordstrom and his co-board members were all elected to their positions, held themselves out to be board members, and acted as board members in reappointing the board. So for the purposes of the First Amendment analysis here, the court will treat Nordstrom as an elected official.

[3] *See Werkheiser v. Pocono Twp.*, 210 F. Supp. 3d 633, 640 (M.D. Pa. 2016) ("*Garcetti* does not apply to publicly elected officials."); *Hoffman v. Dewitt County*, 176 F. Supp. 3d 795, 811 (C.D. Ill. 2016) (declining to apply *Garcetti* to an elected official); *Melville v. Town of Adams*, 9 F. Supp. 3d 77, 102 (D. Mass. 2014) ("*Garcetti* does not apply to *elected officials'* speech, at least to the extent it concerns official duties."); *Alsworth v. Seybert*, 323 P.3d 47, 57-58 (Alaska 2014) ("Limiting elected officials' speech protections runs counter to the jurisprudence of the U.S. Supreme Court . . . ."); *see also Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)

The Supreme Court reasoned in *Garcetti* that "[r]estricting speech that owes its existence to a public employee's professional responsibilities . . . . simply reflects the exercise of employer control over what the employer itself has commissioned or created. . . . [T]he First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." 547 U.S. at 421-24. An elected official's speech, on the other hand, is not "commissioned or created" by an employer, and is not subject to "managerial discipline." So *Garcetti*'s reasoning is not easily extended to elected officials.

Besides, the Supreme Court's earlier statements in *Bond v. Floyd* suggest that the First Amendment *does* protect elected officials' speech. 385 U.S. 116 (1966). In *Bond,* the Court held that an elected official's First Amendment rights were violated when the Georgia House of Representatives prevented him from taking office because of his statements concerning the Vietnam War. The Court discussed the importance of First Amendment protections for elected officials' political speech:

> The manifest function of the First Amendment in a representative government requires that legislators be given the widest latitude to express their views on issues of policy. . . . The interest of the public in hearing all sides of a public issue is hardly advanced by extending more protection to citizen-critics than to legislators.

---

(noting, without discussing *Garcetti*, that the parties did not contest that an elected official's votes and statements to reporters "were protected by the First Amendment"); *Van De Yacht v. City of Wausau*, 661 F. Supp. 2d 1026, 1033-36 (W.D. Wis. 2009) (assuming that an elected official's "political speech on behalf of her constituents was constitutionally protected" but holding that "the right of elected officials to be free from retaliation for political speech was not clearly established at the time of the alleged conduct"). *But see Hartman v. Register*, No. 06-cv-33, 2007 WL 915193, at *6 (S.D. Ohio Mar. 26, 2007) (concluding that *Garcetti* applies to elected officials); *Hogan v. Twp. of Haddon*, No. 04-cv-2036, 2006 WL 3490353, at *6 (D.N.J. Dec. 1, 2006) (concluding that, under *Garcetti*, an elected official had "no First Amendment rights" in any speech made in her official capacity).

*Id.* at 135-36. The reasoning of *Bond* counsels against extending *Garcetti* to elected officials' speech, because doing so would contravene the "manifest function of the First Amendment." The court concludes that Nordstrom's statements made as part of his official duties as an elected town supervisor are protected by the First Amendment.

That brings us to the second prong of the First Amendment retaliation analysis: whether Nordstrom suffered a deprivation that would likely deter First Amendment activity in the future. This prong uses an "objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). The fact that Nordstrom, Wasmundt, and the other town board members are elected officials is pertinent to the deprivation analysis, because politicians should have thick skin: "[w]here the alleged misconduct relates to the statements or actions of elected officials, the threshold is particularly high." *Willson v. Yerke*, 604 F. App'x 149, 151 (3d Cir. 2015). "[N]othing in *Bond* . . . suggests the Court intended for the First Amendment to guard against every form of political backlash that might arise out of the everyday squabbles of hardball politics." *Werkheiser v. Pocono Twp.*, 780 F.3d 172, 181 (3d Cir. 2015). Put simply, "more is fair in electoral politics than in other contexts." *Blair*, 608 F.3d at 544. With this perspective in mind, the court considers the two retaliatory acts that Nordstrom alleges.

First, Nordstrom alleges that Wasmundt's threat of pursuing criminal charges, and the resulting investigation, would deter a person of ordinary firmness from engaging in future protected speech. But the Seventh Circuit has held that an individual accused of criminal misconduct does not state a First Amendment retaliation claim against his accuser because the accuser does not have "the power to initiate criminal proceedings." *Levy v. Pappas*, 510 F.3d

8

755, 764 (7th Cir. 2007), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010); *see also Footit v. Van De Hey*, No. 04-cv-459, 2005 WL 1563334, at *6 (E.D. Wis. June 29, 2005) (concluding that the plaintiff failed to state a retaliation claim against his fellow board members when "[t]hey simply reported to the district attorney their suspicions that Footit had violated the law and asked him to investigate"). Nordstrom, like the plaintiff in *Footit*, "is hardly the first politician to be accused of a crime by a political opponent. Attacks on the character of those holding public office are as old as the county itself." 2005 WL 1563334, at *4. An accusation of criminal misconduct, even when it leads to an investigation—criminal or otherwise—is not a deprivation under the First Amendment, especially when the accusation is made by one politician against his political opponent.

Second, Nordstrom alleges that the vacate-and-reappoint "scheme" would deter a person of ordinary firmness from engaging in future protected speech. Had Nordstrom been removed from his position on the board "[t]hrough the ordinary functioning of the democratic process," *Blair*, 608 F.3d at 544, his removal clearly would not have been a deprivation under the First Amendment. On the other hand, the illegitimate exclusion of a duly elected official from office clearly *is* the type of retaliation that the First Amendment guards against. *See Bond*, 385 U.S. 116, 137 ("[T]he disqualification of Bond from membership in the Georgia House because of his statements violated Bond's right of free expression under the First Amendment.").

This case does not quite present either prototypical scenario. Nordstrom was not legitimately voted out of office at the next election, but he was not quite forced out by the vacate-and-reappoint scheme either. Instead, Nordstrom alleges that he was forced to resign from his position out of fear that the board would appoint another person to Nordstrom's seat,

causing "disorder and possibly violence due to citizens attending the meeting feeling that they were watching an unlawful expulsion of their chosen representative." Dkt. 7, ¶ 4083. Nordstrom, borrowing from employment law, calls this a constructive discharge. Defendants argue that constructive discharge is not a cognizable claim in the First Amendment context.[4] Nordstrom's theory seems more akin to a coerced resignation theory,[5] but regardless of what the claim is called, the question remains the same: would Wasmundt's alleged conduct likely deter future First Amendment activity? The answer is yes.

An elected official exercising his or her legal authority illegitimately in an attempt to exclude a fellow elected official from office would likely deter a person of ordinary firmness from continuing to engage in political speech. *Cf. Velez v. Levy*, 401 F.3d 75, 98 (7th Cir. 2005) (concluding that an elected board member's allegations that the chancellor fraudulently removed her from the board under trumped-up charges stated a retaliation claim, even though she was later reinstated); *Smith v. Winter*, 782 F.2d 508, 512 (5th Cir. 1986) (concluding that elected board members' allegations that the superintendent fraudulently misused a recall statute against the members, resulting in a recall election that the members won, stated a retaliation claim). Taking Nordstrom's allegations as true, Wasmundt was bent on ousting Nordstrom and was using the vacate-and-reappoint procedure to do it. Even if the vacate-and-reappoint procedure was a legitimate method of solving the oath-of-office problem (and that's

---

[4] Defendants are wrong. *See Wallace v. Benware*, 67 F.3d 655, 663 (7th Cir. 1995) (concluding that, under the facts of the case, "a constructive discharge violates the First Amendment").

[5] "Constructive discharge occurs when an employer makes employment so unbearable that an employee resigns; coerced resignation is characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges." *Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010).

a dubious notion), Wasmundt was using it in an illegitimate manner: he meant to vacate Nordstrom's seat but *not* reappoint him.[6]

Of course, Wasmundt never got the chance to follow through with his plan, because Nordstrom resigned before the vote to reappoint (or appoint someone else) occurred. But by the time Nordstrom resigned, Wasmundt had done more than advocate or engage in political puffery: he had set his plan in action by releasing an agenda for the town board meeting that included "Notice of Vacancy in Town of Stettin Supervisor Nordstrom Position." Dkt. 7, ¶ 4081. Wasmundt's illegitimate exercise of legal authority was already under way when Nordstrom resigned, or at least that is a fair implication from Nordstrom's complaint.

Nordstrom alleges that Wasmundt exercised his legal authority illegitimately in an attempt to exclude Nordstrom from office, so Nordstrom sufficiently alleges a deprivation that would likely deter political speech in the future. The court will deny defendants' motion to dismiss Nordstrom's First Amendment claims. And although the court agrees with defendants that Nordstrom's equal protection claims are a mere rewording of his First Amendment claims, defendants only argue that the equal protection claims should be dismissed if his First Amendment claims are dismissed, so the court will deny their motion to dismiss the equal protection claims, too.

---

[6] One might argue that Nordstrom had already done the exact same thing to Wasmundt by voting against reappointment. But Nordstrom, as the minority vote, did not have the power to bar Wasmundt's reappointment. (At least not when Krueger's vote was counted.) So Nordstrom was merely voicing his political opinions, not exercising legal authority illegitimately. *See Velez*, 401 F.3d at 99 (noting that legislators "voicing their political opinions, rather than exercising some sort of legal authority," are not retaliating in a manner actionable under the First Amendment); *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994) ("A legislative body does not violate the First Amendment when some members cast their votes in opposition to other members out of political spite or for partisan, political or ideological reasons.").

ORDER

IT IS ORDERED that:

1. Defendants Matthew Wasmundt and Town of Stettin's motion to dismiss, Dkt. 12, and defendant Allied World Specialty Insurance Company's motion to dismiss, Dkt. 18, are redirected to plaintiff Allan A. Nordstrom's amended complaint, Dkt. 25.

2. Defendants' motions to dismiss, Dkt. 12 and Dkt. 18, are DENIED.

Entered May 15, 2017.

                        BY THE COURT:

                        /s/

                        _____
                        JAMES D. PETERSON
                        District Judge